DISTRICT COURT OF THE FIRST JUDICIAL DISTRICT
OF THE COUNTY OF HUDSON.

MARIE ALLIEGRO ET AL., PLAINTIFFS, v. CITY OF
BAYONNE, DEFENDANT.

WILLIAM KOPISCHKE ET AL., PLAINTIFFS, v. CITY OF
BAYONNE, DEFENDANT.

Decided August 7, 1942.

For the plaintiffs, *Jacob J. Levey*.

For the defendant, *William Rubin*.

Cozzi, D. C. J. The uncontroverted facts in these matters are that on November 4th, 1941, a general election was held throughout the County of Hudson, including the City of Bayonne. On that day, citizens of Bayonne, through a referendum · procedure had placed upon the ballots, three referendum questions. In general terms, the questions concerned, 1. Whether members of the police department in the City of Bayonne should be given increases in salary? 2. Whether members of the fire department in the City of Bayonne should be given increases in salary? and 3. Whether or not the Board of Commissioners should adopt an ordinance creating a housing authority in the City of Bayonne?

The superintendent of elections of Hudson County, by reason of complaints received by him that efforts were going to be made to win certain of the referendum elections through illegal means, appointed a group of deputies to serve at the

polls in the City of Bayonne. The superintendent of elections considered these appointments to be necessary in order to protect the rights of the citizens of Bayonne. No deputies were appointed in any other parts of the county, and deputies would not have been appointed in the City of Bayonne, except for the fact that these referendums were upon the ballot. At the time of the appointments, the superintendent of elections fixed the rate of compensation for these deputies at ten ($10) dollars per day, and following the election, certified to the City of Bayonne that these deputies had been appointed, that their rate of pay was ten ($10) dollars per day, and that they had performed the necessary work, and that the superintendent of elections considered it necessary in order to carry out the provisions of the Revised Statutes pertaining to the Election Laws, for him to appoint these deputies. The City of Bayonne refused to pay the deputies, and hence, these suits. The City of Bayonne, at the trial of these cases, offered no evidence in contradiction to these facts.

Motions for a dismissal of the complaints on the ground that they do not set forth good causes of action were denied. Likewise, motions for nonsuit and direction of verdict were also denied.

The gist of the defendant's contention is that because the provisions of R. S. 40:46-27 and 19:37-1; N. J. S. A. 40:46-27 and 19:37-1, which provide that the referenda questions referred to can be voted upon at a general election, the county should pay the expenses incurred for the services rendered by the deputies appointed by the superintendent of elections.

It is pertinent to note that the provisions of R. S. 40:46-27; N. J. S. A. 40:46-27, uses the word "shall," and the provisions of R. S. 19:37-1; N. J. S. A. 19:37-1, uses the word "may" be voted at the next general election in such municipality. The alternative to vote the question provided in provisions of R. S. 19:37-1; N. J. S. A. 19:37-1, would be to hold a special election pursuant to the provisions of R. S. 40:35-3; N. J. S. A. 40:35-3, which reads as follows:

"In every case in which a referendum vote of the legal or qualified voters of a municipality is authorized by law such

vote may be taken at a special election to be held in such municipality on a day to be specified in a resolution of the governing body thereof. When such a resolution shall be adopted by the governing body specifying a day for the special election, and notice thereof shall be given to the proper officer, he shall cause notice of the special election to be published once in a newspaper published or circulating in the municipality at least ten days before election. *The election shall be held, conducted and canvassed as other elections in the municipality, and the same shall be as valid and effectual as if the vote had been taken at a general election where so provided and all subsequent proceedings may be taken as if the vote had been taken at a general election."*

The provisions of the above section clearly indicate that the legislature intended to do away with special procedure pertaining to special elections which was required previously as indicated in the case of *Scheible* v. *Borough of Hightstown,* 93 *N. J. L.* 69. It did not intend to do away with special elections, but merely to liberalize and conform the procedure with that required of general elections. In accordance with this scheme the legislature has merely permitted a combination of elections, general and special, to be decided on a general election ballot.

A special election is defined in 20 *Corp. Jur.* 56, ¶ 3, as being:

"Special election is one provided for by law under special circumstances. It is an election held to supply a vacancy in office before the expiration of the full term for which the incumbent was elected, *or an election at which some question or proposition is submitted to the vote of the qualified electors, or an election for some particular emergency.* It is not necessarily the time or manner of holding an election, but the fact that it is held at a time other than the time fixed by law to elect an officer for the regular or defined term; an election to fill a vacancy is a special election, although held on the same day as a general election. *So where a proposition may be submitted at a general or special election, that fact that it is submitted at the former does not change the election on the referendum from a special to a general one.*

Also the fact that an election on a proposition is set for the day of the holding of a state primary does not alter its status as a special election held at a time selected by certain public officials as distinguished from a general election held at a time designated by statute."

It is obvious that what took place on general election day in 1941 was the holding of special elections on the referenda questions in accordance with the general scheme of our election laws.

*R. S.* 19:32-2; *N. J. S. A.* 19:32-2, provides as follows:

"All necessary expenses incurred in carrying out the provisions of this title when certified to and approved by such superintendent in connection with an election held in and for a municipality only shall be paid by the municipality."

In conformance with the provisions of this section, the superintendent of elections certified and approved necessary expenses incurred in carrying out the provisions of this title in connection with "an election" held in and for a municipality.

Certainly the referendum questions were held in and for the municipality only and in no other part of the county. The nature and importance of these questions is manifest. Besides firemen, it involved the police, who represent the law and order and since their respective interests were at stake and upon complaints received, the superintendent of elections acted under these local conditions, peculiar to Bayonne alone, because he felt that the sanctity of the ballot and the propriety of the elections were apparently in jeopardy. He, therefore, appointed these deputies to preserve law and order and conduct these proper lawful elections. With the exception of Bayonne, the appointment of deputies in other parts of the county was not necessary. It is clear that his power to appoint the deputies and charge the costs to the municipality, emanates from the provisions of *R. S.* 19:32-2 and 3; *N. J. S. A.* 19:32-2 and 3. This was his obvious duty.

The defendant further argues: "If the Court should decide that a 'special' election was held in and for a municipality only on November 4th, 1941, the effect would be to require the municipality to pay all the costs, charges and

expenses of the county clerk including the compensation of members of the district boards, county board, clerks thereof, &c." This argument is untenable. It overlooks the plain and choice language used by the legislature in *R. S.* 19:32-2 and 3; *N. J. S. A.* 19:32-2 and 3, which subtly sets forth a definite and flexible formula, clearly and equitably fixing the responsibility for such expenses. Simple construction of its provisions would create no confusion or undue difficulty in determining the liability under the circumstances, for expenses incurred at elections. There is no problem, at all, in this case, when applying this formula embraced in *R. S.* 19:32-2 and 3; *N. J. S. A.* 19:32-2 and 3, to the present situation, as it definitely segregates this particular expense from that chargeable to the county, it being incurred, for the reasons stated, solely and primarily to alleviate a local condition created by special elections held upon the referenda questions mentioned.

For the reasons stated, judgment will be entered in favor of each plaintiff in the foregoing matters on his respective count in the sum of ten ($10) dollars, against the City of Bayonne.